CASE 41—EQUITY—JANUARY 18.

# Tibbs v. Reed, Etc.

APPEAL FROM BOYLE CIRCUIT COURT.

ADVERSE POSSESSION—EVIDENCE.—In an action to recover real es-
tate alleged to have been delivered to hold until the grantee
should reimburse himself for an indebtedness of the grantor,
the defense of an adverse holding for nearly forty years is
sustained by showing an unexplained holding for that period
in the absence of satisfactory proof that such holding was
amicable.

ROBERT J. BRECKINRIDGE, JR., FOR APPELLANT.

1. The widow of Jordan Meaux was a necessary party and the
   court should have required her to be made a party or should
   have dismissed the action. Civil Code, secs. 118, 92-4, 371-2, 24;
   Carpenter v. Miles, 17 B. M., 598; Vanbuskirk v. Levy, 3 Met.,
   133; Ogle v. Clough, 2 Duv., 145; Shawhan, &c., v. Zinn, &c.,
   79 Ky., 300.
2. The judgment is erroneous in holding that the action was not
   barred by limitation. Robinson's Com. v. Elam's Exr., 90 Ky.,
   300; Caufman v. Sayre, &c., 2 B. M., 202; Rev. Stat., chap. 63,
   art. 1, sec. 2; Fenwick v. Macey's Exrs., 1 Dana, 276.
3. Section 16, article 4, chapter 63, Revised Statutes, barred the
   action.

C. C. FOX AND FELIX G. FOX FOR APPELLEES.

1. The appellant's entry was amicable and the proof fails to show
   any change in the character of the holding. Gilpin v. Davis, 2
   Bibb., 416; Dorsey v. Reese, 14 B. M., 127; Douglass v. Cline,
   12 Bush, 608; Newport, &c., v. Douglas, &c., Id., 673; Jones'
   Admr. v. Jenkins, &c., 83 Ky., 391; Ward v. Edge, &c., 19 Ky.
   Law Rep., 59.
2. The interest of Jordan Meaux's widow is not sufficiently alleged,
   and the court did not err in refusing to dismiss the action for
   failure to make her a party. Waits v. McClure, 10 Bush, 673;

Justice v. Phillips, 3 Bush, 200; Smith v. Maupin, 4 Ky. Law Rep., 359; Scribner on Dower, p. 33, sec. 21; Anderson's Trustee v. Sterritt, &c., 79 Ky., 499; Civil Code, sec. 28.

3. It was the appellant's duty to have made the widow a party. Vandever v. Vandever, 3 Met., 137.

FELIX G. FOX FOR APPELLEES IN A PETITION FOR A REHEARING.

The opinion herein is erroneous in three particulars, (1) as to the consideration to be given the finding of the chancellor on the facts; (2) as to the relative rights of mortgagor and mortgagee in the mortgaged property after condition broken; and (3) as to the burden of proof on the issue of adverse possession. Additional citations: Davezac v. Seiler, 93 Ky., 418; Fuqua v. Fuqua, 13 Ky. Law Rep., 131; Woolley v. Holt, 14 Bush, 788; Bartlett v. Borden, 13 Bush, 45; Thompson v. Thompson, &c., 93 Ky., 435; Landers v. Barbee, 8 Ky. Law Rep., 773.

JUDGE BURNAM DELIVERED THE OPINION OF THE COURT.

In 1851 Jordan Meaux, the ancestor of appellees, executed a mortgage to appellant upon a house and lot, to indemnify him as his surety upon two notes aggregating $284. Both of these notes were paid by appellant, as the security for Meaux, at the maturity thereof. Appellees allege that their ancestor, Meaux, to repay this money to appellant, put him in possession of the mortgaged property under a verbal agreement·that he was to rent it out and collect the money therefor until he had realized a sufficient sum to reimburse him for the money paid by him as surety upon the debts which the property was mortgaged to secure, and, after a sufficient sum to pay these debts had been collected, the property was to be returned to their ancestor; that appellant took possession of the property under this agreement in 1853 or 1854, and had held possession of it since—and they charge that he has collected, or with reasonable diligence could have collected, from the rent of the property, not only enough to

reimburse him for the money paid by him as surety for
their ancestor, but that he had realized a large sum over
and above the amount due him, and seek judgment for
this overplus, and ask that they be put in possession of the
property. Appellant, by way of defense, denies that he
took possession of the property under any contract with
the ancestor of appellees, but says that he was compelled
to pay the debts on which he was bound as surety for
Meaux at the maturity thereof, and that, by virtue of the
mortgage executed to him, he took possession of the prop-
erty in 1853 or 1854, and had held continuous, uninter-
rupted, and adverse possession from that date until the
institution of this suit—a period of nearly forty years—
and pleads and relies upon the lapse of time and the stat-
ute of limitation in bar of plaintiff's claim. The chan-
cellor adjudged plaintiffs entitled to the relief sought, and
from that judgment this appeal is prosecuted.

It is the contention of appellees that the possession of
appellant was never an adverse one, and that the plea
of limitation is not an available defense. The determina-
tion of the case depends upon the question as to whether
the possession of appellant was amicable or adverse to the
ancestor of appellees, and the testimony on this point is
somewhat meager. Appellees rely in support of their con-
tention chiefly upon the testimony of one Monroe Hick-
man, who says that he recollects about the skirmishing
between Jordan Meaux and Ben Tibbs about the land;
that early in the '50's Tibbs loaned Meaux some money—
how much he did not know—that he was present on one
occasion when Jordan Meaux was making apologies for not
paying the money when he sold his mule colts; that he
made defendant a proposition to take his house and lot,
and that he would pay him some money when he sold

something else—he did not recollect what; that Tibbs said to him: "Jordan, I don't like to be treated that way. You have disappointed me; but I will do that if you will stand up to your promise, as I believe that is the only way I will get my money;" that he did not know whether Tibbs got possession of the property or not, under that agreement, but that he does know that he was drawing the rents in 1854, and that a renter asked Tibbs if he would put some glass in a window, and that Tibbs said "No," that he was working to get his money out of it, and that he did not have anything else to do with it; that he had a talk with Jordan in 1870 or 1871 in the presence of Samuel Warren; that he commenced the conversation about the property, and was crying about it; and that Warren released him from the conversation by taking Jordan away. This testimony is not conclusive that appellant took possession of the property under the contract sought to be established. It will be noticed that as far back as 1870 or 1871, this witness testifies, he had a conversation with Jordan Meaux in regard to this property, and that he "was crying about it," and complaining of appellant's refusal to surrender possession, in the presence of one Samuel Warren. And it seems that there can be no doubt that at this time the possession of appellant was hostile to the claim of Meaux himself. And this view is corroborated by the fact that on the 5th day of June, 1854, Meaux instituted a suit against appellant for the possession of this identical property, in which he alleged that appellant "had taken possession of the house and lot mentioned in the mortgage, and had refused, without right, to surrender possession to him," and sought in that action the identical relief that appellees seek here. That suit was dismissed by Meaux himself before answer. The allegations of this

petition, which were sworn to by Meaux, show conclusively that at that time appellant's possession was adverse and hostile.  The ancestor of appellees lived for eighteen or twenty years after the dismissal of his suit in 1854, and for the greater part of this time resided in the same town with appellant, and more than fifteen years elapsed after his death before the institution of this suit by appellees for the recovery of the property; and there is no proof that during this period any legal steps were taken, either by Meaux during his lifetime, or by his heirs at law subsequently to his death, to interfere with the possession of appellant.  Nor is there any evidence that appellant during this time ever recognized any right of ownership of this property in Meaux or his descendants.  It is improbable that appellant would have been allowed to remain in possession of this property for such a length of time if his possession thereof could have been successfully assailed.  It must be presumed from the continued and uninterrupted possession of this property by appellant during this period of time, that his holding thereof was adverse to the claims of all the world, and there is no evidence in the record sufficient to rebut this presumption; and we think the plea of the statute of limitation relied on by appellant is a complete defense.  Wherefore the judgment is reversed, and the cause remanded, with directions to dismiss plaintiff's petition.